United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

G & G CLOSED CIRCUIT EVENTS, LLC,

Plaintiffs,

v.

BUKHARI NAJEEULLAH BAASET, et al.,

Defendants.

Case No. 24-cv-00089-EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL**

Docket Nos. 99, 103

Plaintiff G&G Closed Circuit Events, LLC has filed suit against two Defendants: (1) BNB Wings N' Things LLC ("BNB LLC") and (2) Bukhari Najeeullah Baaset, the owner, manager, or member of BNB LLC. According to G&G, it had exclusive commercial exhibition licensing rights to a certain boxing program, but Defendants intercepted and broadcast the program – without G&G's consent – at a commercial establishment called BNB Wings N' Things (the "BNB establishment"), located at 4780 Mission Street, San Francisco.

Now pending before the Court are two motions filed by G&G: (1) a motion for summary judgment as to Mr. Baaset and (2) a motion for voluntary dismissal as to BNB LLC.[1] Having considered the summary judgment papers submitted as well as the oral argument presented at the hearing on the summary judgment motion, the Court hereby **GRANTS** the motion for summary judgment. As for G&G's motion for voluntary dismissal, it is suitable for disposition without oral argument, and thus the hearing on the motion is **VACATED**. The motion for voluntary dismissal without prejudice is **GRANTED**.

[1] Mr. Baaset is proceeding pro se. BNB LLC currently does not have counsel to represent it.

United States District Court
Northern District of California

## I. FACTUAL & PROCEDURAL BACKGROUND

A. Causes of Action

G&G has asserted the following causes of action against Defendants:

(1) Violation of the Communications Act of 1934, 47 U.S.C. § 605.

(2) Violation of the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553.

(3) Conversion.

(4) Violation of California Business & Professions Code § 17200.

Although § 553 and § 605 both deal with signal piracy, they address different modes of interception. Section 553 "concerns '**cable** systems,'" and, "[t]o be liable under § 553, [a defendant] must have intercepted or received a 'communications service offered over a cable system' without authorization." *G&G Closed Cir. Events, LLC v. Liu*, 45 F.4th 1113, 1115 (9th Cir. 2022) (emphasis added). "Section 605, by contrast, prohibits the unauthorized interception, receipt and use of 'radio communications,' including '**satellite** television signal piracy.' To establish liability under § 605 . . . , [a defendant's broadcast of a program] must have been a 'radio communication' as it is defined under § 605 or otherwise involved a satellite television signal." *Id.* at 116 (emphasis added).

As the Ninth Circuit has noted, "[t]here are potentially intricate issues of overlap and distinction between [§ 553 and § 605], one of which speaks more to cable television, the other more to satellite television." *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 349 n.1 (9th Cir. 1999). *See, e.g.*, *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001) (discussing decisions from the Seventh and Second Circuits; ultimately "conclud[ing] that § 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system,' and no more"; thus, "[o]nce a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605"). But at least at this juncture, the Ninth Circuit has not delved into those intricate issues. *See G&G v. Liu*, 45 F.4th at 1116 (noting that these issues "have not been clearly resolved in the Ninth Circuit"). While the Ninth Circuit

has not given express guidance, district courts in the circuit have generally held that "'[a] signal pirate violates section 553 if he intercepts a cable signal, [and] he violates section 605 if he intercepts a satellite broadcast[,] [b]ut he cannot violate both by a single act of interception.'" *Innovative Sports Mgmt. v. Polanias*, No. 24-cv-06435-EJD, 2025 U.S. Dist. LEXIS 65364, *5 (N.D. Cal. Apr. 4, 2025).

In its pending summary judgment motion, G&G seeks a judgment against only Mr. Baaset and on only two out of the four causes of action pled: (1) the § 605 claim (not the § 553 claim) and (2) the conversion claim.

B. <u>Procedural History</u>

Before considering the evidence submitted by G&G in conjunction with its summary judgment motion, the Court takes into account the procedural history of this case as it informs G&G's motion.

G&G initiated the instant case in January 2024. *See* Docket No. 1 (complaint). A default was entered against both Defendants (BNB LLC and Mr. Baaset) in March 2024 after they failed to respond to the complaint. *See* Docket No. 14 (notice). After the default, Mr. Baaset filed an answer. *See* Docket No. 15 (answer). The Court subsequently set aside Mr. Baaset's default but not BNB LLC's. *See* Docket No. 23 (order). Settlement discussions ensued thereafter but were not successful.

In February 2025, the initial case management conference was held, and BNB LLC was given 60 days to find counsel. *See* Docket No. 41 (minutes). In April 2025, defense counsel made an appearance for both Defendants. *See* Docket No. 50 (minutes). Defendants then answered the complaint. *See* Docket Nos. 68, 71 (amended answer and second amended answer).

In October 2025, the Court granted defense counsel's motion to withdraw. It warned BNB LLC about the risk of default and gave BNB LLC 30 days to locate new counsel. *See* Docket No. 87 (order). In January 2026, a status conference was held. Mr. Baaset appeared pro se and stated that he was not able to find an attorney for BNB LLC because of the cost. The Court stayed the case for 90 days. *See* Docket No. 92 (minutes).

/ / /

In April 2026, another status conference was held. Mr. Baaset failed to appear. G&G suggested a default (terminating sanctions). The Court suggested instead that G&G serve requests for admission ("RFAs") which could then be used to support a motion for summary judgment. In September 2026, G&G filed its motion for summary judgment, supported by, *inter alia*, the fact that Mr. Baaset had failed to respond to RFAs that were propounded on him.

C. Summary Judgment Evidence

In support of its summary judgment motion, G&G has submitted evidence reflecting the following.

1. Parties

G&G is a "closed circuit distributor of sports and entertainment programming." Gagliardi Decl. ¶ 3. It "buys commercial distribution rights from entertainment producers and then sublicenses the rights to display televised sports and entertainment programs at commercial establishments such as bars, clubs, and restaurants." *G&G v. Liu*, 45 F.4th at 1115.

During the relevant period, BNB LLC was the licensee and primary owner of the BNB establishment operating at 4780 Mission Street, San Francisco. *See* 2d Am. Ans. ¶ 7 (admission to Compl. ¶ 7). The managing member and officer of BNB LLC is Mr. Baaset. *See* 2d Am. Ans. ¶ 8 (admission to Compl. ¶ 8); *see also* Pl.'s RJN, Exs. 1-2 (BNB LLC filings made with California Secretary of State); RJN, Ex. 3 (BNB LLC filing made with California Department of Alcoholic Beverage Control).

2. Program at Issue

G&G's claims against BNB LLC and Mr. Baaset are based on G&G's licensing rights to the *Gervona Davis v. Ryan Garcia Right Program*, which was telecast nationwide on Saturday, April 22, 2023. G&G obtained the exclusive commercial exhibition licensing rights to the Program, which included the main event (Davis v. Garcia) as well as all undercard bouts and commentary. *See* Gagliardi Decl. ¶ 3 & Ex. 1 (licensing agreement). G&G sub-licensed the right to exhibit the Program to commercial customers. *See* Gagliardi Decl. ¶ 3. The fee for a sublicense varied, depending on the capacity of the establishment where the Program would be shown. *See* Gagliardi Decl. ¶ 8.

3. <u>Defendants' Exhibition of Program</u>

Prior to the telecast, an account on Instagram – "bnbwingsnthings" – advertised the Program. *See* Riley Decl. ¶ 6 & Ex. 2 (post).




In their answer, Defendants admitted they advertised – through social media posts on Instagram – that the Program would be shown at the BNB establishment. *See* 2d Am. Ans. ¶ 16 (admission to Compl. ¶ 16).

Neither BNB LLC nor Mr. Baaset, however, had obtained a sublicense to broadcast the Program. *See* Gagliardi Decl. ¶ 3. Had Defendants sublicensed the Program, the cost of a sublicense for an establishment the size of the BNB establishment was $1,700. *See* Gagliardi Decl. ¶ 8 & Ex. 2 (rate card for Program) (reflecting price of $1,700 for capacity of 1 to 100 persons).

G&G has "retained auditors and law enforcement personnel to detect and identify signal pirates." Gagliardi Decl. ¶ 6. One of G&G's auditors visited the BNB establishment located at 4780 Mission Street, San Francisco, on the evening of the telecast. *See* Galvez Aff. The auditor saw an interview involving Jim Gray, Sugar Ray Leonard, and Manny Pacquiao, which was part of the Program. *See* Gagliardi Decl. ¶ 7; Galvez Aff. ¶. According to the auditor, the BNB

establishment had a capacity of about 40 people, and there were about 25 people at the establishment. There were 2-3 flat screen televisions showing the Program. The auditor did not pay a cover charge to enter the establishment. The "establishment rates" (implicitly for food and drink) were "fair." Galvez Aff.

G&G's programming cannot be mistakenly, innocently, or accidentally intercepted because the programming is encrypted and only after G&G authorizes a commercial activation can a commercial establishment broadcast G&G's signal. *See* Gagliardi Decl. ¶ 9; *see also* Gagliardi Decl. ¶ 12 (explaining that, "[i]f a commercial establishment is authorized . . . to receive a program, the establishment is provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, *or* the establishment's programming provider is notified to unscramble the reception of the program for the establishment") (emphasis added). A signal pirate can unlawfully intercept and broadcast G&G's programming in a number of ways – *e.g.*, by using illegal unencryption devices or accessing websites that are not authorized to broadcast or distribute. *See* Gagliardi Decl. ¶ 10.

4. <u>RFAs</u>

As indicated above, at the Court's suggestion, G&G propounded RFAs on Mr. Baaset (not BNB LLC, presumably because it does not have counsel). The RFAs – a total of 101 – were served on May 11, 2026.[2] *See* Riley Decl. ¶ 4. As of the filing date of the summary judgment motion (September 21, 2026), Mr. Baaset had not responded to the RFAs. *See* Riley Decl. ¶ 5.

Under Federal Rule of Civil Procedure 36, "[a] matter is **admitted** unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. P. 36(a)(3) (emphasis added). G&G's RFAs expressly warned Mr. Baaset – albeit without specifically referring to Rule 36 – that "[t]he facts, the application of law of [sic] fact, or opinions about either, **will be deemed admitted** unless within 30 days after being served, Defendant serves on Plaintiff a written answer or objection addressed to each matter, that is signed by Defendant or

[2] Given the underlying purpose of the RFAs, it seems both excessive and unnecessary for G&G to have prepared and propounded 101 RFAs.

Defendant's attorney." Riley Decl., Ex. 1 (RFAs) (emphasis added); *see also Medina v. Donahoe*, 854 F. Supp. 3d 733, 748 (N.D. Cal. 2012) ("Before a matter may be deemed admitted against a pro se litigant for failure to respond to a request for admission, 'the request for admission should contain a notice advising the party to whom the request is made that, pursuant to Rule 36 . . . , the matters shall be deemed admitted unless said request is responded to within thirty (30) days after service of the request or within such shorter or longer time as the court may allow.'"); *Kuhn v. Casto*, No. 3:22-cv-00486, 2023 U.S. Dist. LEXIS 197888, at *12 (S.D. W. Va. Nov. 3, 2023) ("Courts typically will not deem requests admitted where the party to whom the requests are directed is proceeding pro se and is unaware of the consequences of failing to respond.").

Because of his failure to respond, Mr. Baaset has admitted to, *inter alia*, the following, all of which favors G&G:

- He was the owner and/or manager of the BNB establishment on the day of the telecast. *See* RFAs Nos. 58-59.
- He had the right and ability to supervise the activities of the BNB establishment on the day of the telecast. *See* RFAs Nos. 68-69.
- He had a financial interest in the activities of the BNB establishment on the day of the telecast, *see* RFA No. 70, and he obtained a monetary benefit from the establishment's profits on the day of the telecast. *See* RFA No. 75.
- In advance of the Program, he advertised that the Program would be telecast at the BNB establishment. *See* RFA No. 34.
- He was aware that a licensing fee had to be paid in order to telecast the Program at the BNB establishment. *See* RFA Nos. 19-20. He did not pay, and no one else on his behalf paid, a licensing fee for the Program for exhibition at the BNB establishment. *See* RFAs Nos. 3-4, 21.
- He did not order, and no one else on his behalf ordered, the Program for the BNB establishment "from any other authorized party with the intention of paying [G&G] for the telecast of the [Program]." RFA Nos. 5-6.
- He intercepted and broadcast the Program at the BNB establishment. *See* RFAs

Nos. 7-8, 81.

- He did not have G&G's authorization to broadcast the Program. *See* RFAs Nos. 14-16.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where a plaintiff moves for summary judgment on claims that it has brought (*i.e.*, for which it has the burden of proof), it "must prove each element essential of the claims . . . by undisputed facts." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 607 (N.D. Cal. 1992); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (stating that, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original); *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 U.S. Dist. LEXIS 2860, at *3-4 (N.D. Cal. Mar. 4, 1994) (noting that, at summary judgment, the burden faced by the opposing party "var[ies] with the burden of proof they will face at trial"; while a "[p]laintiff must prove each essential element by undisputed facts," a defendant "faces a lighter burden" and "need only point to the insufficiency of the [p]laintiff's evidence").

In the instant case, G&G moves for summary judgment on two out of four causes of action: (1) the § 605 claim and (2) the conversion claim. The § 605 claim is the more significant



United States District Court
Northern District of California

claim because statutory damages as well as enhanced statutory damages can be obtained for a violation of § 605.

B. <u>Section 605</u>

Section 605 provides in relevant part as follows:

- "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."
- "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."
- "No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

47 U.S.C. § 605(a). In essence, "liability under section 605 requires proof that a defendant has '(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff.'" *California Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985). As noted above, the "unauthorized interception, receipt and use of 'radio communications,' includ[es] '**satellite** television signal piracy.'" *G&G v. Liu*, 45 F.4th at 1115.

Whereas § 605 is about piracy of satellite television signals, § 553 is about piracy of **cable** television signals. Section 553 provides: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized



United States District Court
Northern District of California

by law." 47 U.S.C. § 553(a)(1).

Here, G&G seeks relief based on a violation of § 605 and not § 553. Implicitly, that decision is informed by the fact that the remedies under the two statutes are different, with those available under § 605 being more favorable to a plaintiff.

- **Section 605.**
  - For a violation of § 605, a plaintiff may be awarded either (1) actual damages suffered plus the defendant's profits or (2) statutory damages "for **each** violation . . . in a sum of **not less than $1,000 or more than $10,000**, as the court considers just." 47 U.S. § 605(e)(3)(C)(i) (emphasis added).
  - In addition, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of **not more than $100,000** for each violation . . . ." *Id.* § 605(e)(3)(C)(ii) (emphasis added). On the flip side, "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." *Id.* § 605(e)(3)(C)(iii).
  - Finally, a court "**shall** direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." *Id.* § 605(e)(3)(B) (emphasis added).
- **Section 553.**
  - For a violation of § 553, a plaintiff may be awarded either (1) actual damages suffered plus the defendant's profits or (2) statutory damages "for **all** violations . . . in a sum of **not less than $250 or more than $10,000** as the court considers just." *Id.* § 553(c)(3)(A) (emphasis added).
  - In addition, "[i]n any case in which the court finds that the violation was

committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory . . . , by an amount of **not more than $50,000**." *Id.* § 553(c)(3)(B) (emphasis added). On the flip side, "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." *Id.* § 553(c)(3)(C).

- Finally, a court "**may** direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." *Id.* § 605(e)(3)(B) (emphasis added).

In the instant case, G&G asks for statutory damages of **$5,000** and an enhancement of **$25,000**. These amounts fall within the ranges of *both* § 605 and § 553. Thus, to a large extent, the benefit that G&G seeks by moving for summary judgment on § 605 rather than § 553 is that attorneys' fees are mandatory rather than discretionary.

1. <u>Liability</u>

Before addressing remedies, however, the Court must consider liability: is there a genuine dispute of material fact that (a) Mr. Baaset (the only defendant subject to the summary judgment motion) intercepted and published the Program (b) without G&G's authorization or consent? This basic question obtains whether G&G is asserting a claim under § 605 or § 553.

At the hearing on the summary judgment motion, Mr. Baaset conceded liability.[3] Even if he had not, the Court finds that there is no genuine dispute that Mr. Baaset is liable.

First, there is no genuine dispute that there was interception and publication of the Program at the BNB establishment. The undisputed evidence reflects that Defendants advertised they would show the Program at the BNB establishment (Defendants admitted such in their answer), and G&G's auditor saw a part of the Program being broadcast at the BNB establishment on the

---

[3] Consistent with this concession, Mr. Baaset did not file an opposition to the motion for summary judgment.

day of the telecast.

There is also no genuine dispute that Mr. Baaset was connected to the interception and publication. BNB LLC was the licensee and primary owner of the BNB establishment, and Mr. Baaset is the managing member and officer of BNB LLC. For both § 605 and § 553, courts have looked to copyright law and common law principles to hold that there can be secondary liability for an individual such as Mr. Baaset – *i.e.*, under a theory of contributory infringement or vicarious liability. *See, e.g.*, *Innovative Sports Mgmt. v. Nunez*, No. 22-cv-07136-JSC, 2023 U.S. Dist. LEXIS 120790, at *10-11 (N.D. Cal. July 13, 2023).

"'Contributory infringement is shown when the individual defendant authorize[d] the violations.'" *G & G Closed Circuit Events, LLC v. Lalmansingh*, No. 23-CV-9098-AMD-JRC, 2025 U.S. Dist. LEXIS 149650, at *13 (E.D.N.Y. Aug. 4, 2025); *see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (in discussing contributory infringement under copyright law, stating that "[o]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another may be liable as a contributory [copyright] infringer") (internal quotation marks omitted).

For vicarious liability,

> a plaintiff must allege: "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." "[A] plaintiff must allege more than an officer's mere right and ability to supervise the corporation's conduct generally" and ". . . must allege that the defendant had supervisory power over the infringing conduct itself."

*Innovative Sports*, 2023 U.S. Dist. LEXIS 120790, at *12; *see also G&G v. Lalmansingh*, *G & G Closed Circuit Events, LLC v. Lalmansingh*, No. 23-CV-9098-AMD-JRC, 2025 U.S. Dist. LEXIS 149650, at *14 (E.D.N.Y. Aug. 4, 2025) (stating that "[a]llegations based solely on an individual defendant's position as an officer or principal of the establishment are insufficient to establish liability where the plaintiff fails to identify any actions the individual defendant took with respect to displaying the Event or fails to show that the defendant had an obvious and direct financial interest in the infringement").

/ / /

Here, the evidence establishes both contributory infringement and vicarious liability. For contributory infringement, Mr. Baaset admitted in the answer that he advertised the Program. As for vicarious liability, through the RFAs, Mr. Baaset has admitted both the right and ability to supervise the infringing conduct and a direct financial interest in the infringing activity.

Second, there is no genuine dispute that Mr. Baaset did not have G&G's authorization or consent to intercept and broadcast the Program. Mr. Baaset has admitted, for example, that he did not pay a licensing fee to G&G, and G&G has also provided a declaration to support that Defendants did not pay a licensing fee.[4]

Accordingly, because of Mr. Baaset's concession to liability, and the undisputed evidence, the Court holds that there is no genuine dispute Mr. Baaset is liable for signal piracy.

2. <u>Remedies</u>

a. <u>Attorneys' Fees</u>

As indicated above, if G&G can prove there is no genuine dispute that the signal that was intercepted was a **satellite** signal, then there would be a § 605 violation. In contrast, if there is a genuine dispute (*i.e.*, the signal could have been a **cable** one), then there would be a § 553 violation. This distinction matters for at least attorneys' fees, where such fees are mandatory under § 605 but only discretionary under § 553. *Cf. Shame on You Prods. v. Banks*, 893 F.3d 661, 665-66 (9th Cir. 2018) (in copyright case, where fees are discretionary under 17 U.S.C. § 505, stating that "nonexclusive factors" that may be considered include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the

---

[4] There are some RFAs which – if deemed admitted – could contradict G&G's position that Defendants did not have authorization or consent to exhibit the Program. However, absent a motion by Mr. Baaset to withdraw his admissions, G&G effectively has the ability to "pick and choose" the admissions on which it relies. *Cf.* 7 Moore's Fed. Prac. – Civ. § 36.03 ("While the party requesting the admission is entitled to *rely* on the conclusiveness of an admission, the party requesting the admission is not necessarily *bound* by the admission, and even if the requesting party offers the admission in evidence, the requesting party is also free to produce contradictory evidence.") (emphasis added). *See, e.g.*, *Champlin v. Okla. Furniture Mfg. Co.*, 324 F.2d 74, 76 (10th Cir. 1963) (stating that "[t]he submission of requests for admissions by a litigant does not, in and of itself, bind the litigant to the truth or existence of the facts contained in the answers to the requests"); *Brook Vill. N. Assocs. v. Gen. Elec. Co.*, 686 F2d 66, 69-75 (1st Cir. 1982) (holding that, although defendant was bound by amount of damages set forth in request to admit that it failed to answer and could not argue for a lower amount, plaintiff was free to introduce evidence that damages were even higher because it was not bound to that amount).

United States District Court
Northern District of California

need in particular circumstances to advance considerations of compensation and deterrence . . . so long as such factors are faithful to the purposes of the Copyright Act") (internal quotation marks omitted). Of course, under both § 605 and § 553, the attorneys' fees must be reasonable. *See, e.g.*, *TCI, Inc. v. Carpenter*, 849 F. Supp. 326, 327 (N.D. Ill. 1994) (where plaintiff moved for fees under both § 553 and § 605, concluding that a reasonable fee should be low given the nominal success achieved by the plaintiff).

In the case at bar, G&G argues that there is no genuine dispute that Mr. Baaset intercepted a satellite (not cable) signal, relying primarily on the admissions to the RFAs. *See, e.g.*, RFA No. 47 ("The Event was received in the Establishment because residential satellite service was diverted into the Establishment."); RFA No. 48 ("The Event was received in the Establishment because you used a satellite access card programmed to enable you to receive satellite service without proper authorization or payment."). Because there is no evidence to contradict the RFA admissions, and Mr. Baaset has not otherwise contested G&G's contention that there was satellite piracy, the Court concludes that attorneys' fees are warranted under § 605. Alternatively, even if G&G had only established cable piracy, the Court would still exercise its discretion to award attorneys' fees, particularly because Mr. Baaset is responsible, at least in part, for the extended nature of this litigation.[5]

b. <u>Statutory Damages</u>

This leaves statutory damages. As noted above, G&G seeks $5,000 as statutory damages and $25,000 as enhanced statutory damages. Because there are authorities holding that the amount of such damages is for a jury to decide,[6] the Court asked the parties at the hearing whether they

---

[5] To be clear, the Court is not finding Mr. Baaset *solely* responsible for the extended nature of this litigation. G&G has also had a hand in such.

[6] *See J&J Sports Prods. v. PTG LLC*, No. 18-CV-492, 2019 U.S. Dist. LEXIS 21672, at *3, 8 (E.D. Wis. Feb. 11, 2019) (recognizing that the language of the statutes "refer[s] to determinations to be made by the court, including using the phrases 'as the court considers just,' 'the court finds' and 'the court in its discretion,' [but] the use of the term 'the court] in that context does not indicate whether Congress intended damages to be determined by a judge or a jury"; ultimately "agree[ing] with the majority of courts . . . that parties have a right to have a jury decide claims for statutory damages under 47 U.S.C. §§ 553 and 605"); *G&G Closed Cir. Events, LLC v. Nguyen*, No. 5:12-cv-03068 EJD, 2013 U.S. Dist. LEXIS 81387, at *6 (N.D. Cal. June 10, 2013) (holding that "Plaintiff is entitled to a jury trial on alleged violations of 47 U.S.C. §§ 553 and (or) 605 as

would waive the right to a jury trial on damages. The parties agreed to do so such that the Court could make the decision on the amount of damages. The Court now makes its findings on damages.

The Court addresses first statutory damages under § 605(e)(3)(C)(i). Under this provision, a plaintiff may be awarded statutory damages "for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S. § 605(e)(3)(C)(i). The Court awards $1,700, which is the licensing fee that G&G would have charged Mr. Baaset to exhibit the Program. An award of $1,700 is appropriate because most courts approach statutory damages as a rough approximation of actual damages. *See, e.g.*, *J&J Sports Prods. v. Cruz*, No. 14-2496, 2015 U.S. Dist. LEXIS 64757, at *10 (E.D. Pa. May 18, 2015) (stating that "(1) statutory damages should be based on an estimation of actual damages, and (2) '§ 553's overall structure favors weighing deterrence under the enhanced damages provision and not under the statutory damages provision'"; "statutory damages are merely an alternative to actual damages," and "[t]he Court should not double count deterrence by considering it first in an actual or statutory damages award and then again into an enhanced damages award"); *see also G&G Closed Cir. Events, LLC v. Segura*, No. 21-16381, 2022 U.S. App. LEXIS 12876, at *1-2 (9th Cir. May 12, 2022) ("rejecting G&G's argument that the district court erred by conflating an award of actual damages under § 553(c)(3)(A)(i) with an award of statutory damages under § 553(c)(3)(A)(ii)[;] [i]t is not error for a court to consider estimated actual damages as a factor in determining the amount of statutory damages"). While courts have recognized that §§ 605 and 553 also contemplate an award of the defendant's profits (to the extent they are "attributable to the violation" and "are not taken into account in computing the actual damages," 47 U.S.C. § 605(e)(3)(C)(i)(I); *id.* § 553(c)(3)(A)(i)), G&G has not provided any evidence about Mr. Baaset's profits.

/ / /

/ / /

---

well as on the cause of action for conversion"); *Joe Hand Promotions v. Toto Wibowo Lukito*, No. C-10-00209-JF, 2010 U.S. Dist. LEXIS 76279, at *8 (N.D. Cal. July 20, 2010) ("hold[ing] that the Seventh Amendment preserves the right to jury trial on issues related to Plaintiff's request for statutory damages under §§ 553 and 605).

G&G argues that it should be awarded more – $5,000 – because, if only the licensing fee is awarded, that is an incentive for a signal pirate to unlawfully intercept and broadcast given that the odds of being caught are low. That rationale was articulated in a report and recommendation issued by Judge Westmore in a piracy case involving a different plaintiff. *See J&J Sports Prods. v. Segura*, No. 4:17-cv-05335-YGR (KAW), 2018 U.S. Dist. LEXIS 66291, at *17-18 (N.D. Cal. Apr. 19, 2018) (R&R addressing motion for default judgment) (also suggesting that a damage award based on a licensing fee alone "'would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that [plaintiff] can charge for sublicenses'"; ultimately awarding $5,400 in statutory damages – three times the commercial licensing fee – in large part because defendant was a "repeat offender"), *adopted by* 2018 U.S. Dist. LEXIS 91194, at *1 (N.D. Cal. May 31, 2018) (noting, *inter alia*, the lack of any objection to the R&R). This Court, however, is not persuaded by that rationale. If there is a desire to issue an award that has a deterrent effect, that goes to what *enhanced* statutory damages should be – not statutory damages in the first instance. To the extent there is a concern about under-compensation, that may be a reason to give a plaintiff some leniency in proving up statutory damages – *i.e.*, because actual damages or the defendant's profits are hard to prove. But that does not justify application of a multiplier as G&G suggests.

As for enhanced statutory damages, § 605(e)(3)(C)(iii) provides that, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ." 47 U.S.C. § 605(e)(3)(C)(ii) (emphasis added). The Court agrees with G&G that an enhancement is justified. Willfulness is established by the fact that Defendants advertised the program. That being said, the amount of the enhancement sought by G&G – $25,000 – is excessive.

An award of $25,000 would be almost 15 times the statutory damages of $1,700. But courts have generally awarded a much smaller multiplier. Indeed, courts have typically awarded 2-3 times the amount of statutory damages where the defendant is not a repeat offender, the

violation is relatively small in scale, and/or the financial gain to the defendant is limited. *See, e.g.*, *Joe Hand Promotions, Inc. v. Kadel*, No. 1:25-cv-813, 2026 U.S. Dist. LEXIS 209484, at *14 (S.D. Ohio Sept. 16, 2026) ("find[ing] that awarding enhanced damages of $2,190, twice the statutory damage award, would adequately deter defendants and others from committing future violations and reflect the relatively small scale of this particular violation"; indicating the violation was small in scale because "[d]efendants are not repeat violators, they advertised the Fight only twice – once on their own Facebook page and once in the local neighborhood group – did not charge a cover fee, and displayed the Fight on only three screens to three patrons out of a potential capacity of one hundred"); *Innovative Sports Mgmt. v. Polanias*, No. 25-cv-05060-BLF, 2026 U.S. Dist. LEXIS 105160, at *16-17 (N.D. Cal. May 12, 2026) (rejecting "enhanced damages of $20,000 – a 20x multiplier of the sublicensing fee Defendant should have paid" because "Plaintiff's evidence of willfulness is modest: "Plaintiff submits no evidence that Defendant charged a cover fee[,] the restaurant was less than a third full[,] and there is no evidence of increased food or beverage charges," such that "the only reasonable inference the Court can draw is that Defendant did not profit from the unlawful broadcast of the Program"; ultimately awarding a multiplier of 3 "primarily based on Defendant's pattern of violation"); *Zuffa, LLC v. Cuebas*, No. 3:24-CV-01269, 2025 U.S. Dist. LEXIS 114779, at *14-15 (M.D. Pa. June 17, 2025) (awarding 3 times the statutory damages because the complaint did not allege that defendants were repeat offenders, it was not clear what defendants "unlawful gains were or if [they] collected a cover charge," and plaintiff's financial loss was limited ($1,905); "[c]ourts addressing similar circumstances have awarded enhanced damages of three times the awarded statutory damages"); *G&G Closed Cir. Events, LLC v. Clayton*, 779 F. Supp. 3d 317, 339 (E.D.N.Y. 2025) (noting that "[c]ourts in this district have 'typically set damages at either two or three times the amount of the basic statutory damages'"; because there was no evidence that defendants were repeat offenders, that cover charges or premiums for food or drink were charged, or that plaintiff suffered significant damages apart from the licensing fee, an award of 2 times the statutory damages was appropriate); *G&G Closed Cir. Events, LLC v. Pacheco*, No. 20-cv-7457 (LJL), 2021 U.S. Dist. LEXIS 180058, at *8-9 (S.D.N.Y. Sept. 20, 2021) (indicating that a multiplier of 3 is typical

where a defendant is not a repeat offender).

In the instant case, there is no evidence that Mr. Baaset is a repeat offender. There is no evidence of the extent of Defendants' unlawful monetary gains, and, even if there were profits, they were likely not that significant: the BNB establishment was at a little over half capacity, the investigator stated that he did not have to pay a cover to enter the establishment, and he also stated that the establishment rates were fair. While Mr. Baaset did advertise the Program on the BNB establishment's Instagram account, it appears that there was only one ad – *i.e.*, this is not a situation where the Program was being heavily promoted.

Taking into account the authorities above and the facts of the case at bar, the Court finds that enhanced statutory damages of two times the statutory damages are appropriate. The Court thus awards $3,400 as enhanced damages.

C. <u>Conversion</u>

G&G also moves for summary judgment on a second cause of action – specifically, the claim for conversion. In California, the elements of a conversion claim are "[(1)] ownership or right to possession of property, [(2)] wrongful disposition of the property right and [(3)] damages." *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Voris v. Lampert*, 7 Cal. 5th 1141 (2019) (stating the same; adding that "[n]otably absent from this formula is any element of wrongful intent or motive" – *i.e.*, "conversion is a 'strict liability tort'").

Furthermore, "'officers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefore and acted merely as agents of the corporation." *Granoff v. Yackle*, 196 Cal. App. 2d 253, 257 (1961). The rationale is that "an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested.'" *Id.*; *see also PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381-82 (2000) (stating that "[a]ll persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered[;] [t]his rule applies to intentional torts committed by . . . those acting in their official capacities as officers or directors of a corporation, even though the corporation is also liable"). *Accord Innovative Sports Mgmt. v.*

*Valenzuela*, No. 19-cv-02785-JSW (JCS), 2021 U.S. Dist. LEXIS 219451, at *14 (N.D. Cal. Aug. 30, 2021) (R&R) (stating that "'California law does not impose liability on corporate officers merely for their role in the corporation, but only for wrongful acts in which they have been personally involved'"), *adopted by* 2021 U.S. Dist. LEXIS 219450 (N.D. Cal. Oct. 8, 2021).

California Civil Code § 3336 provides for damages available for the tort of conversion. It states:

> The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> First – The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and
>
> Second – A fair compensation for the time and money properly expended in pursuit of the property.

Cal. Civ. Code § 3336.

The liability analysis for § 605 is largely applicable here; thus, there is no genuine dispute that Mr. Baaset is liable for the tort of conversion. *See Innovative Sports v. Valenzuela*, 2021 U.S. Dist. LEXIS 219451, at *14 (in addressing conversion claim brought against a signal pirate, taking note of allegations that the individual defendant "was involved in the unauthorized broadcast or at least that he was responsible for his employees' conduct by virtue of the fact that he was in charge of operating [the establishment]").

As for damages, G&G asks to be awarded $1,700 which represents "the amount Defendant should have paid to broadcast the *Program* lawfully." Mot. at 17. Although there is no genuine dispute that the licensing fee was $1,700, there is a question of whether G&G should be entitled to the $1,700 because it is already being compensated for actual damages through § 605. Courts have gone both ways on the issue of whether damages for a conversion claim consisting of the licensing fee are duplicative of damages under § 605 (or § 553). *See, e.g.*, *Innovative Sports Mgmt. v. Polanias*, No. 25-cv-05060, 2026 U.S. Dist. LEXIS 105160, at *17 (N.D. Cal. May 12, 2026) ("The Court notes that some courts in this district have declined to award conversion damages in similar circumstances, finding that the sublicensing fee sought as conversion damages

United States District Court
Northern District of California

is subsumed in the award of statutory damages. Other courts in this district have awarded both statutory damages and conversion damages. This Court finds it appropriate to award conversion damages, particularly in light of the Court's award of only modest enhanced damages."); *Joe Hand Promotions, Inc. v. Santana*, 964 F. Supp. 2d 1067, 1076 (N.D. Cal. 2013) ("Courts have 'subsumed' conversion damages under statutory damages where the statutory damages are sufficient to compensate the plaintiff for its loss."). This Court agree with those courts that have found the damages duplicative.

D. Summary

For the foregoing reasons, the Court grants G&G's motion for summary judgment on its § 605 and conversion claims against Mr. Baaset. There is no genuine dispute that Mr. Baaset is liable. As for § 605 damages, the Court awards $1,700 as statutory damages and $3,400 as enhanced statutory damages, for a total of $5,100. The Court does not award additional damages for the conversion claim.

## III. MOTION FOR VOLUNTARY DISMISSAL

The only remaining defendant in the case is BNB LLC. Initially, G&G filed a notice of voluntary dismissal against BNB LLC pursuant to Federal Rule of Civil Procedure 41, *see* Docket No. 97 (notice), but, upon inquiry from the Court, *see* Docket No. 98 (order), admitted that it could not do so because BNB LLC had already answered the complaint. *See* Docket No. 100 (Riley Decl.). The Court thus deemed the notice withdrawn, *see* Docket No. 101 (order), and, in its place, G&G has now filed a motion for voluntary dismissal – without prejudice – under Rule 41.[7] *See* Docket No. 103 (motion). G&G indicates that the reason for its motion is that it anticipates that there may be problems with collecting a judgment from the LLC. *See* Mot. at 7 ("Plaintiff seeks to dismiss the LLC due to anticipated issues with collection of any Judgment.").

/ / /

/ / /

/ / /

[7] G&G does not state in its motion whether it tried to obtain a stipulated dismissal from BNB LLC. *Compare* Docket No. 65 (stipulated dismissal of Defendants' counterclaim against G&G).

Because BNB LLC does not have counsel to represent it, it cannot file an opposition to G&G's motion. *See* Civ. L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."). Accordingly, the Court can proceed with its review of G&G's motion now.

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2). In resolving a Rule 41(a)(2) motion, a court "must determine: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." *Olson v. World Fin. Grp. Ins. Agency, LLC*, No. 5:24-cv-00477-EJD, 2026 U.S. Dist. LEXIS 222815, at *30 (N.D. Cal. Sept. 29, 2026).

Allowing dismissal in the circumstances of the case at bar is appropriate. Summary judgment has now been entered against Mr. Baaset so G&G is obtaining some relief, and, from a cost perspective, it does not make sense for G&G to continue proceedings against BNB LLC, especially when it is unlikely that G&G would be able to obtain damages against the LLC separate and apart from the damages issued against Mr. Baaset. *Cf.* Fed. R. Civ. P. 1 (providing that the rules "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding").

G&G's request for a dismissal without prejudice is reasonable.

> [W]here the request is to dismiss without prejudice, [a] District Court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result.
>
> Legal prejudice is a term of art: it means prejudice to some legal interest, some legal claim, some legal argument. But [u]ncertainty because a dispute remains unresolved is not legal prejudice, and the threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice. Additionally, the mere inconvenience of defending another lawsuit does not constitute plain legal prejudice, and plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal.

*Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1280 (9th Cir. 2023) (internal quotation marks

United States District Court
Northern District of California

omitted). Given the above standard, it is difficult to discern any legal prejudice to BNB LLC from a dismissal without prejudice. *See also* Mot. at 6 (arguing that, "even if the threat of re-litigation could support an argument for prejudice, there is no such realistic threat" because the "only claim for which the statute of limitations has not run is the California Business & Professions Act § 17200 claim, and Plaintiff assures the Court it has no intention of renewing that claim against the LLC").

Finally, the Court does not see the need for any conditions on dismissal, even a dismissal without prejudice. For example, even though a defendant can be awarded costs and attorney's fees as a condition of dismissal without prejudice, *see Kamal*, 88 F.4th at 1286-87, such a condition would not be appropriate in the instant case given that Mr. Baaset and BNB LLC's conduct is essentially inseparable and Mr. Baaset has conceded liability. *See also id.* at 1287 (indicating that a defendant would only be entitled to recover costs or fees for work that is not useful in continuing litigation between the parties).

Accordingly, the Court grants G&G's motion for voluntary dismissal without prejudice.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants G&G's motion for summary judgment on the § 605 and conversion claims against Mr. Baaset. As relief, the Court awards attorneys' fees and damages totaling $5,100.

The Court also grants G&G's motion for voluntary dismissal of BNB LLC.

Because G&G could not obtain further relief for its § 553 and § 17200 claims against Mr. Baaset (and G&G has not indicated that it intends to pursue these claims), all claims are now essentially resolved.[8] Accordingly, the Court instructs the Clerk of the Court to enter a final judgment in accordance with this order and close the file in the case.

/ / /

/ / /

/ / /

---

[8] Defendants stipulated to a dismissal of their counterclaim against G&G. *See* Docket No. 65 (stipulated dismissal).

Although the Court is entering a final judgment, the amount of attorneys' fees against Mr. Baaset still needs to be determined. The Court orders G&G to file its motion for attorneys' fees by **November 16, 2026**. Mr. Baaset shall then have until **December 7, 2026**, to file a response. The briefs shall be limited to 10 pages each. There shall be no reply absent further order of the Court. In addition, there shall be no hearing on the fee motion absent further order of the Court.

This order disposes of Docket Nos. 99 and 103.

**IT IS SO ORDERED**.

Dated: November 2, 2026

EDWARD M. CHEN
United States District Judge